**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CASE NO. 25-CV-23858-MOORE/Elfenbein

***In re***

**ELENA SHCHEGOLEVA**,

Applicant,

**Pursuant to 28 U.S.C. § 1782 for**
**Judicial Assistance in Obtaining**
**Evidence for Use in a Foreign Proceeding**.
_____________________________________________/

**ORDER ON ELENA SHCHEGOLEVA'S *EX PARTE* APPLICATION FOR JUDICIAL ASSISTANCE PURSUANT TO 28 U.S.C. § 1782**

**THIS CAUSE** is before the Court on Applicant Elena Shchegoleva's ("Applicant") *Ex Parte* Application for Judicial Assistance Pursuant to 28 U.S.C. § 1782 (the "Application"), ECF No. [1] and First Motion to Amend/Correct Motion for Discovery (the "Motion to Supplement"), ECF No. [11]. The Honorable K. Michael Moore referred this matter to me "to take all necessary and proper action as required by law with respect to the" Application. *See* ECF No. [3]. For the reasons explained below, both the Application, **ECF No. [1]**, and the Supplemental Motion, **ECF No. [11],** are **GRANTED**.

## I. BACKGROUND

In the Application, Applicant requested the Court to authorize discovery pursuant to 28 U.S.C. § 1782 in aid of a pending divorce proceeding in Barcelona, Spain (the "Spanish Divorce Proceeding"), which Oleg Shchegolev ("Respondent"), Applicant's now ex-husband, filed on February 20, 2025. *See* ECF No. [1] at 2. Respondent filed a Motion to Intervene and for Leave to Respond to Applicant's *Ex Parte* Application to Take Discovery Pursuant to 28 U.S.C. § 1782 (the "Motion for Leave"), ECF No. [7], which the Court granted. *See* ECF No. [16] (adopting

Report and Recommendations, ECF No. [15]). As a Result, Respondent filed his Response to Petitioner's *Ex Parte* Application for an Order to Take Discovery Pursuant to 28 U.S.C. § 1782 (the "Response"), ECF No. [17]. Applicant subsequently filed a Reply to Respondent's Response (the "Reply"), ECF No. [18].

According to Applicant, the former couple's net worth primarily derives from SEMrush, a company for which Respondent serves as the Chief Technology Officer. *See* ECF No. [1] at 2. Applicant alleges that Respondent made false statements during the Spanish Divorce Proceeding concerning whether substantial assets from SEMrush are marital property. *See id*. at 2, 7-8. Applicant further alleges that Respondent, with assistance from Andrew George Sukhin ("Sukhin"), Managing Director of AGS Wealth Management Group ("AGS") of Raymond James Financial, Inc. ("Raymond James"), Alexandra Agniya Hill ("Hill") Senior Vice President of AGS, and trusts and estates counsel Michael Bass ("Bass") and others, has concealed and shielded marital assets. *See id*. at 1-2. Applicant alleges that "[Respondent], Sukhin, Hill, Bass and others used financial instruments to transact in hidden marital property including but not limited to AGS managed Raymond James accounts, AGS managed Morgan Stanley accounts, and [Respondent's] Amex credit cards." *See id*. at 3. Applicant further alleges that Mariya Mikhaylovna Gavdyak, a/k/a Mariia Mihaylivna Havdiak ("Havdiak") has been romantically involved with Respondent since mid-2023 and has received travel and other discretionary expenditures he funded. *See id*. at 10-11. The Application indicates that Respondent uses marital assets to fund Havdiak's expenses. *See id*. at 11-12.

Applicant alleges that she lacks access to U.S.-based financial records and witnesses necessary to demonstrate the falsity of Respondent's statements in the Spanish Divorce Proceedings. *See id*. Applicant represents that access to relevant account statements, transactional

records, communications, and third-party records (including records from Havdiak regarding travel, lodging, and discretionary spending allegedly funded by Respondent) is necessary to trace assets and present evidence in Spain regarding equitable distribution, alimony, and child support. *See id*. Applicant seeks leave to issue subpoenas duces tecum to Sukhin, Hill, and Havdiak, and to obtain documentary records from Raymond James, Morgan Stanley, and Amex (collectively, the "Non-Parties"), all for use in the then-pending Spanish Divorce Proceeding. *See id*. at 1.

Applicant and Respondent's litigation history has been quite active after the filing of the Application. Since then Applicant filed a motion to liquidate the marital property in Spain, (the "Spanish Liquidation Proceedings") in November 2025[1], *see* ECF Nos. [17] at ¶11 and [18] at 3; the Spanish Court dissolved Applicant and Respondent's marriage in February 2026[2], *see* ECF Nos. [17] at ¶12 and [18] at 3; Respondent commenced a divorce action in Florida State court which he amended subsequent to the Spanish Court's dissolution of the marriage as an equitable distribution claim, *see* ECF Nos. [17] at ¶13 and [18] at 3-4; and the Spanish Court has since stayed the Spanish Liquidation Proceedings upon Respondent's showing that the Florida State court proceedings had been "admitted for processing," *see* ECF Nos. [17] at ¶¶16-17 and [18] at 3; *see also* ECF No. [18-2] at ¶¶38, 40, 45, 46, 49. Further, both Applicant and Respondent explain that Respondent subsequently filed a defamation action against Applicant in Florida state court, which was removed to the District Court for the Southern District of Florida, *see* 26-CV-80383-DMM (S.D. Fla.)[3], and Applicant filed a lawsuit in the District Court for the District of New Hampshire

---

[1] Applicant indicates that she commenced the Spanish Liquidation Proceedings on November 21, 2025, whereas Respondent notes that the proceedings began on November 20, 2025. *See* ECF Nos. [17] at ¶11 and [18] at 3.

[2] Applicant notes that the Spanish Court issued its final decision dissolving the marriage on February 20, 2026, whereas Respondent indicates that the Spanish Court did so on February 24, 2026. *See* ECF Nos. [17] at ¶12 and [18] at 3.

[3] The Court notes that this action was dismissed voluntarily as to Applicant on May 12, 2026, and the case

regarding Respondent's alleged fraud, *see* 26-CV-00261-SE-AJ (D.N. H.).[4] *See* ECF Nos. [17] at 7, 14, 19 and [18] at 9-10.

With that background, the Court turns to the arguments advanced in the Application. Therein, Applicant asserts that the Application meets all the statutory requirements of 28 U.S.C. § 1782. *See* ECF No. [1] at 4, 13-14. First, Applicant contends that she is an "interested person" within the meaning of the statute because she is a litigant in the Spanish proceedings. *See id*. at 14. Second, she contends that she seeks documentary and testimonial evidence through discovery requests. *See id*. Next, Applicant asserts that she satisfies the third § 1782 requirement because the evidence she seeks is for use in a foreign proceeding. As explained above, the Spanish Divorce Proceeding was pending at the time she filed the Application, but the Application notes that she sought the discovery to also provide for an equitable division of marital property . *See e.g. id*. at 4, 7, 19. Finally, Applicant contends she meets the fourth statutory requirement because the Non-Parties are found in this District. *See id*. at 15-17.

Applicant asserts that she also meets the discretionary factors set forth in *Intel Corp v. Advanced Micro Devices, Inc*. 542 U.S. 241, 259 (2004). *See* ECF No. [1] at 4, 17-18. Applicant contends that the first *Intel* factor weighs in favor of granting the Application because the Non-Parties are not, and will likely never be, parties to the Spanish proceeding. *See id*. at 17. Next, Applicant contends that the Spanish Court would be receptive to the requested discovery and that Applicant is, in fact, "expected" to produce evidence contradicting Respondent's joint asset assessment and provide for an "equitable division of marital property," thus supporting the second discretionary factor in her favor. *See id*. at 18-19. Next, Applicant argues that the third *Intel* factor

---

closed on July 6, 2026, upon the entry of an order granting a motion to dismiss.

[4] The Court notes that the District of New Hampshire case is currently pending.

weighs in her favor because the requested discovery does not "offend any foreign jurisdiction or constitute a circumvention of foreign proof-gathering rules." *See id*. at 19. Finally, Applicant contends that the fourth *Intel* factor weighs in her favor because the requested discovery is "highly" relevant and proportional to the needs of the Spanish proceedings such that it outweighs possible burden or expense of production, and that the discovery requests are narrowly tailored to the relevant time periods and topics disputing Respondent's misstatements of fact. *See id*. at 19.

In the Response, Respondent argues that the Application "should be dismissed" because it is an attempt to circumvent Spanish proof-gathering restrictions and that it is unlikely that the Spanish Court will accept the requested evidence; the Spanish proceeding is currently stayed pending resolution of a "substantially similar state proceeding pending in Florida Courts;" the Application seeks duplicative discovery related to another proceeding pending in the District of New Hampshire; and the requested discovery is overbroad. *See* ECF No. [17] at 1-2, 17-20.

In the Reply, Applicant first argues that Respondent "incorrectly merges" the § 1782 statutory analysis with the *Intel* factors when arguing that the requested discovery is for use in a foreign proceeding because this test is not one of admissibility. *See* ECF No. [18] at 5. Applicant contends that the requested discovery must only serve some use in the foreign proceeding and that the proceeding needs to only be contemplated and not necessarily actively adjudicated. *See id*. Second, Applicant argues that the stay of the Spanish Liquidation Proceeding is not a bar to the Application's requested relief. *See id*. at 5-6. Third Applicant contends that the Response fails to provide any "authoritative proof" that a foreign court would reject the evidence obtained through the Application and that Spanish civil procedure allows for admission of evidence upon proper authentication, but that nonetheless, the Court must not speculate about the Spanish Court's rulings on admissibility. *See id*. at 7. Applicant next argues that despite Respondent's arguments to the

contrary, the discovery requests in the Application do not circumvent proof-gathering restrictions under Spanish law. *See id.* at 7-8. Finally, Applicant asserts that Respondent's arguments regarding the unduly burdensome nature of the discovery requests are abstract, conclusory, and insufficient, and that the parallel domestic proceedings do not bar relief. *See id.* at 9-10.

The Court ordered Applicant and Respondent to submit supplemental briefing addressing "whether the [][A]pplication contravenes Spanish procedural law and discovery rules, identifying the relevant Spanish procedures and rules governing discovery along with certified English translations, analyzing how a pending Letters Rogatory request affects other mechanisms for obtaining foreign discovery in Spain to the extent such mechanisms exist, and explaining the effect, if any, a stay in the Spanish proceeding has on obtaining foreign discovery." *See* ECF No. [19] at 4-5. Both Applicant and Respondent submitted supplemental briefs addressing these issues, which the Court weaves into its analysis of the Application below. *See* ECF Nos. [20] and [21].

While the Application was pending, Applicant filed an unopposed Motion to Supplement in which she provided various updates regarding developments in and status of the Spanish Divorce Proceeding and sought to introduce evidence substantiating these developments to support the need for discovery requested in the Application. *See* ECF No. [11] at 1-22, 6. Notably, Applicant attaches to the Motion to Supplement an order from the Spanish Court directing her and Respondent to submit initial and final inventories, ECF No. [11-1] at 4; Applicant's request to the Spanish Court to form the inventory of marital assets for liquidation, ECF No. [11-2] at 37-69; the initial inventory of Respondent's assets, ECF No. [11-3]; Respondent's account balances as of May 1, 2025, ECF No. [11-4]; and a November 19, 2025 press release by Adobe to acquire SEMrush, Respondent's company, ECF No. [11-5]. Respondent filed a Response to Applicant's Motion to Supplement, ECF No. [12], in which he indicated that he did not oppose "the filing of

the Motion to Supplement," but he "believes the Motion does not provide full and accurate disclosure to this Court." *See* ECF No. [12] at 12. Respondent disputes Applicant's characterizations of the Spanish Court's rulings and attaches various filings and orders from the Spanish Proceeding. Applicant thereafter filed a Reply to the Motion to Supplement, ECF No. [13], in which she seeks to correct Respondent's mischaracterizations and attach additional documents related to the Spanish Divorce Proceedings, Respondent's purportedly deficient asset inventory list, and a denial of a temporary restraining order from the Delaware Chancery Court, which relates to SEMRush. *See* ECF Nos. [13-1] –[13-3].

## II. LEGAL STANDARD

"Section 1782 is the product of congressional efforts, over the span of nearly 150 years, to provide federal-court assistance in gathering evidence for use in foreign tribunals." *Intel Corp.*, 542 U.S. at 247. The "history of Section 1782 reveals Congress' wish to strengthen the power of district courts to respond to requests for international assistance." *Application of Consorcio Ecuatoriano de Telecomunicaciones S.A. v. JAS Forwarding (USA), Inc.*, 747 F.3d 1262, 1269 (11th Cir. 2014) (emphasis and quotation marks omitted).

"A district court has the authority to grant an application for judicial assistance if the following statutory requirements in § 1782(a) are met: (1) the request must be made 'by a foreign or international tribunal,' or by 'any interested person'; (2) the request must seek evidence, whether it be the 'testimony or statement' of a person or the production of 'a document or other thing'; (3) the evidence must be 'for use in a proceeding in a foreign or international tribunal'; and (4) the person from whom discovery is sought must reside or be found in the district of the district court ruling on the application for assistance." *In re Clerici*, 481 F.3d 1324, 1331–32 (11th Cir. 2007) (footnote omitted) (quoting § 1782(a)). Evidence is for use in a foreign proceeding if an applicant

"has the practical ability to inject" it into the proceeding and it can "be employed with some advantage or serve some use in the proceeding." *See In re Application of Salem*, No. 23-CV-23186, 2024 WL 4464288, at *10 (S.D. Fla. Aug. 28, 2024) (quotation marks omitted), *R.&R. adopted sub nom. In re Salem*, No. 23-CV-23186-KMM, 2024 WL 4314771 (S.D. Fla. Sept. 27, 2024); *In re Pons*, 614 F. Supp. 3d 1134, 1144 (S.D. Fla.), *aff'd sub nom. Pons v. AMKE Registered Agents, LLC*, 835 F. App'x 465 (11th Cir. 2020). "If these requirements are met, then § 1782 'authorizes, but does not require, a federal district court to provide assistance.'" *In re Clerici*, 481 F.3d at 1332 (quoting *Intel*, 542 U.S. at 255); *see also United Kingdom v. United States*, 238 F.3d 1312, 1319 (11th Cir. 2001) ("[A] district court's compliance with a § 1782 request is not mandatory.").

"Once the prima facie [statutory] requirements are satisfied, the Supreme Court in *Intel* noted these factors to be considered in exercising the discretion granted under § 1782(a): (1) whether 'the person from whom discovery is sought is a participant in the foreign proceeding,' because 'the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant'; (2) 'the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance'; (3) 'whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States'; and (4) whether the request is otherwise 'unduly intrusive or burdensome.'" *In re Clerici*, 481 F.3d at 1334 (quoting *Intel*, 542 U.S. at 264–65). None of these factors is required or automatically dispositive — they simply "bear consideration in ruling on a § 1782(a) request." *See Intel*, 542 U.S. at 264. In fact, even if a court concludes an application contains "unduly intrusive or burdensome requests," it may still exercise its discretion to grant the application

because those specific requests "may be rejected or trimmed." *Id.* at 265.

Finally, though the Supreme Court has not specifically listed it as a factor in the analysis, sometimes courts look at how granting or denying a § 1782 application would impact international comity concerns. That is because "the animating purpose of § 1782 is comity: Permitting federal courts to assist foreign and international governmental bodies promotes respect for foreign governments and encourages reciprocal assistance." *ZF Auto. US, Inc. v. Luxshare, Ltd.*, 596 U.S. 619, 632 (2022); *see also In re Pimenta*, 942 F. Supp. 2d 1282, 1289 (S.D. Fla. 2013) (noting "the twin aims of the statute: providing an efficient means of assistance to participants in international litigation and encouraging foreign countries to provide reciprocal assistance to our courts").

## III. DISCUSSION[5]

The first step in the Court's analysis is determining whether the Application satisfies all four of the § 1782 statutory requirements. Respondent does not dispute that the first, second, and fourth statutory requirements are met, but it is unclear from the briefing whether he concedes the third factor is satisfied. As a result, the Court will focus its analysis on the seemingly disputed factor. The next step in the Court's analysis is to assess whether the *Intel* discretionary factors weigh in favor of granting the Application. As a note, Respondent concedes the first *Intel* factor is met but disputes the remaining factors, which are the focus of the Court's analysis.

### A. Applicant Has Satisfied the Four Requirements of § 1782

To recap, the four factors enumerated in § 1782 govern the first step of the analysis. *See*

[5] The Court notes that while Respondent includes the legal standard on motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Response is not such a motion where that standard would apply. Indeed, the relief that Respondent requests is that the Court deny the Application, which is itself a request for discovery under § 1782. Further, Respondent's main arguments address the *Intel* factors, which relate to whether the Court will exercise its discretion to authorize discovery for use in foreign proceedings. Consistent with Supreme Court precedent, the Court will, therefore, apply the four § 1782 factors and the *Intel* factors when deciding whether the Application should be granted.

*In re Clerici*, 481 F.3d at 1331–32. As explained above, Respondent does not dispute Applicant's satisfaction of the first, second, and fourth statutory factor, so the Court addresses them briefly. First, Applicant is an "interested person" as defined by the statute. *See* § 1782(a); *In re Clerici*, 481 F.3d at 1331. She was a litigant in the then-pending Spanish Divorce Proceeding and is a litigant in the currently stayed Spanish Liquidation Proceeding. *See* ECF Nos. [1] at 14; [17] at 3; and [18] at 3. That makes Applicant a party to the relevant foreign proceedings, and as the Supreme Court has noted, "litigants are included among, and may be the most common example of, the 'interested persons' who may invoke § 1782." *See Intel*, 542 U.S. at 256 (alteration adopted).

Second, Applicant's request "seek[s] evidence," including the "'testimony or statement' of a person" and the production of "'a document or other thing.'" *See In re Clerici*, 481 F.3d at 1331–32 (quoting § 1782(a)). Indeed, Applicant requests "testimony and documentary evidence from Sukhin, Hill, Havdiak, Raymond James, Morgan Stanley and Amex." *See* ECF No. [1] at 14. And Applicant points to subpoenas included with the Application to substantiate her position. *See id.*; *see also* ECF Nos. [1-17] – [1-22].

Regarding the fourth statutory requirement, Respondent does not contest that the people or entities from which Applicant seeks discovery reside or are found in this District. *See* § 1782(a); *In re Clerici*, 481 F.3d at 1332. As the Application notes, all six Non-Parties are "found in this district." *See* ECF No. [1] at 16-17. As to the individuals, it is uncontested that (1) Sukhin resides in Sunny Isles Beach, Florida and operates AGS within the District; (2) Hill maintains a residence in Hallandale Beach and conducts business from AGS's Hallandale Office; and (3) Havdiak has a residence in Sunny Isles Beach. *See In re MTS Bank,* No. 17-MC-21545, 2017 WL 3155362, *5 (S.D. Fla. July 25, 2017) (explaining that being found in a district for purposes of § 1782 is broadly

interpreted and distinct from the requirements conferring personal jurisdiction.). As to the corporations, Applicant argues, and Respondent does not contest that Raymond James is a Florida corporation and that it and Morgan Stanley and Amex each conduct business, maintain offices, and have registered agents in this District. *See* ECF No. [1] at 16-27. And when a company "has an office and does business in Miami," it is found in the Southern District of Florida for purposes of § 1782. *See Consorcio Ecuatoriano*, 747 F.3d at 1269.

Turning to the third statutory requirement, the Court must determine whether the evidence Applicant seeks is "for use in a proceeding in a foreign or international tribunal." *See* § 1782(a); *In re Clerici*, 481 F.3d at 1332. Applicant contends that the foreign proceeding is pending and that the Spanish Court is a foreign tribunal because it hears cases and "operates as a 'first-instance decisionmaker.'" *See* ECF No. [1] at 15. While Respondent does not clearly contest this, he seemingly conflates the analysis of this factor with the third *Intel* factor, so the Court addresses the position regarding that statutory factor here. Respondent argues that the proper procedure for requesting the discovery Applicant seeks is through the letters rogatory process and that Applicant made such a request from the Spanish Court, but it has yet to rule on it. *See* ECF No. [17] at 18-19. He summarily asserts that the § 1782 statutory factors are not met, and the Court should not allow discovery under the statute because "it circumvents the rules of the foreign proceeding and is duplicative of the three other pending cases in the United States." *See id*. at 19. Respondent further argues in supplemental briefing that a stay essentially freezes the whole proceeding. *See* ECF No. [20] at 6-7.

In the Reply, Applicant contends that Respondent conflates the third *Intel* factor with the third statutory factor and that nevertheless, the "for use" requirement does not bear on admissibility; it simply means the requested discovery must serve some use in the foreign

proceeding. *See* ECF No. [18] at 5. According to Applicant, under § 1782, the foreign proceeding needs only to be contemplated, not actively adjudicated, to meet the requirement. *See* ECF No. [18] at 5. She maintains that the discovery sought here is directly related to determining the marital property for distribution, regardless of its ultimate admissibility in the Spanish proceeding. *Id*. Applicant also argues that the Spanish Liquidation Proceeding is still a live controversy despite the stay. *See id*. at 5-6. According to Applicant, "the Spanish Court has confirmed its authority to effect equitable distribution in the Spanish Liquidation Proceeding," but it entered a procedural stay because the Florida state court divorce proceeding was filed prior to the Spanish Liquidation Proceeding, explaining that the stay is contingent upon the Florida case "being actively adjudicated." *See* ECF No. [18] at 6. Applicant argues that the Florida state court divorce action will be dismissed soon for lack of personal jurisdiction, and the Spanish Court will lift the stay. *See id*. at 6-7. Applicant further explains that under Spanish law, a stay is procedural, does not bar submission of evidence, and it only extends the window to submit proof. *See* ECF No. [21] at 7.

The Court finds that Applicant meets this statutory requirement under § 1782. Applicant has established that she "has the practical ability to inject the requested information into a foreign proceeding." *In re Bernal*, No. 18-MC-21951, 2018 WL 6620085, at *4 (S.D. Fla. Dec. 18, 2018) (citations omitted). First, the Spanish Liquidation Proceeding has not concluded, and while the Parties both explain what potential effects a stay may have on discovery under Spanish law, they take completely different positions. *Compare* ECF No. [20] at 6-7 (explaining that a stay essentially freezes the case to where obtained evidence would not be introduced) *with* ECF No. [21] at 7 (explaining that a stay under Spanish law extends the window to submit evidence in Spanish Court and does not affect the admissibility of properly obtained evidence.). Here Respondent presents no evidence indicating that the Spanish Court has definitively stated it will

not consider any new evidence. He explains that, during the stay, the Spanish Court does not continue ordinary procedural steps and that no evidentiary phase regarding the merits of the liquidation of marital assets can be "opened or conducted" and that "if foreign evidence were to be obtained, it would not be introduced." *See* ECF No. [20] at 7. But this argument, even if true, bears on admissibility and not discoverability. And discoverability is the lens by which the Court analyzes this statutory requirement. The Spanish Court, not this Court, should determine whether evidence obtained by the requested discovery is admissible and will be better positioned to make that determination if Applicant is allowed to conduct the requested discovery. *See In re Bernal*, 2018 WL 6620085, at *5 (citing *In re Application of Grupo Qumma*, No. M 8-85, 2005 WL 937486, at *3 (S.D.N.Y. Apr. 22, 2005)); *John Deere Ltd. v. Sperry Corp.*, 754 F.2d 132, 136, n.3 (3d Cir. 1985) ("To require that a district court undertake a more extensive inquiry into the laws of the foreign jurisdiction would seem to exceed the proper scope of section 1782"; "[it is] doubtful whether such language can be expanded to impose a requirement that district courts predict or construe the procedural or substantive law of the foreign jurisdiction.").

Even if Respondent is correct that the Spanish Court may ultimately refuse to consider the evidence Applicant seeks, this is no reason to sound a death knell to the Application. *See In re Bernal*, 2018 WL 6620085, at *5 ("[I]n deciding whether this statutory requirement is met, we need 'not attempt to conduct a detailed analysis of foreign law,' but rather focus on 'the twin aims of the statute: providing an efficient means of assistance to participants in international litigation and encouraging foreign countries to provide reciprocal assistance to our courts.'" (citing *In re Pimenta*, 942 F. Supp. at 1289)); *Euromepa S.A. v. R. Esmerian, Inc.,* 51 F.3d 1095, 1100 (2d Cir. 1995) ("[W]e believe that a district court's inquiry into the discoverability of requested materials should consider only authoritative proof that a foreign tribunal would reject evidence obtained

with the aid of section 1782. Such proof, as embodied in a forum country's judicial, executive or legislative declarations that specifically address the use of evidence gathered under foreign procedures, would provide helpful and appropriate guidance to a district court in the exercise of its discretion. Absent this type of clear directive, however, a district court's ruling should be informed by section 1782's overarching interest in 'providing equitable and efficacious procedures for the benefit of tribunals and litigants involved in litigation with international aspects.'"). Indeed, § 1782 does not require that a foreign proceeding be at a certain stage prior to granting an application for assistance and instead requires that courts err on the side of granting discovery because foreign tribunals can easily disregard materials they do not wish to consider. *See In re Banco Sistema S.A.*, No. 23-MC-21868, 2024 WL 1826609, at *4 (S.D. Fla. Apr. 24, 2024). For these reasons, the Court finds that Applicant has satisfied the four statutory factors under § 1782.

**B. The *Intel* Factors Weigh in Favor of Granting the Application**

As explained above, once the statutory requirements are satisfied, the discretionary factors the Supreme Court set out in *Intel* govern the second step in the § 1782 analysis. *See* 542 U.S. at 264–65; *In re Clerici*, 481 F.3d at 1334. Here, each of the four *Intel* factors weighs in favor of granting the Application.

a. <u>The First *Intel* Factor</u>

First, it is undisputed that the Non-Parties are not participants in the foreign proceeding and likely never will be. As the Supreme Court has explained, "when the person from whom discovery is sought is a participant in the foreign proceeding," the "need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad" because a "foreign tribunal has jurisdiction over those appearing before it, and can itself order them to produce evidence." *Intel*, 542 U.S. at 264. "In contrast, nonparticipants in the

foreign proceeding may be outside the foreign tribunal's jurisdictional reach; hence, their evidence, available in the United States, may be unobtainable absent § 1782(a) aid." *Id.* At the time Applicant filed the Application, the Spanish Divorce Proceeding, which also involved assessment of joint assets and an equitable division of marital property, was underway, and the Spanish Liquidation Proceeding is currently stayed. *See* ECF Nos. [1] at 18, [17] at ¶18, [18] at 3. Sukhin, Hill, Havdiak, Raymond James, Morgan Stanley, and Amex are nonparties who are not subject to the Spanish Court's jurisdiction. *See id*. at 18. The Spanish Court cannot order these individuals and financial institutions to appear for deposition or produce documents. *See id*. For these reasons, the first *Intel* factor weighs in favor of granting the Application.

b. The Second *Intel* Factor

Turning to the second *Intel* factor, the Court assesses the "nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance" to determine whether this factor weighs in favor of granting the Application. *See Intel*, 542 U.S. at 264; *In re Clerici*, 481 F.3d at 1334. Applicant indicates that the Spanish Court would be receptive to the requested documentary and testimonial evidence because of the pending Spanish Divorce Proceeding and the subsequently filed and currently stayed Spanish Liquidation Proceeding. *See* ECF Nos. [1] at 18-19 and [18] at 3. Applicant points to Articles 265, 270, 283, 287 of Spanish procedural law[6] to support her contention that there is no specific regulation that prevents the admission of documents obtained through foreign discovery. *See* ECF No. [21] at 3. According to Applicant, the requested discovery satisfies the requirements of Articles 270, 283, and 287 because the information sought is useful to resolve the disputed facts regarding the inventory of marital

[6] The Spanish law Applicant cites to in supplemental briefing to support her positions is Law 1/2000, of 7 January, on Civil Procedure. *See* ECF Nos. [21] and ECF No. [21-1].

property and its equitable distribution, as well as Respondent's control over the alleged non-marital trusts and entities. *See id*. at 4-6. According to Applicant, the requested discovery will be lawful because she will comply with the Federal Rules of Civil Procedure, no fundamental rights will be violated in obtaining this evidence, and she will submit the evidence to the Spanish Court as soon as possible. *See id*. at 4.

Respondent argues that the Spanish proceeding is stayed; the information Applicant seeks will not be admissible in Spain; and that taken together, Applicant asks the Court to allow her to obtain discovery the Spanish Court would prohibit. *See* ECF No. [17] at 17-18. He asserts that *Ley 29/2015, de 30 de julio, de cooperación jurídica internacional en materia civil* ("Law 29/2015") is the Spanish law governing international legal cooperation between the Spanish Court and foreign jurisdictions and that Articles 29 – 32 of this law relate to obtaining evidence abroad to be admissible in Spanish legal proceedings. *See* ECF No. [20] at 1-2. Respondent cites a litany of provisions within Spanish procedural law to support his contention, and one of them requires that judges presiding over the case "shall" be present at the testimony of the parties and witnesses and to any other evidentiary proceeding that must be held in an adversarial and public manner. *See* ECF No. [20] at 3, 49-55.

In the Reply, Applicant argues that for Respondent to prevail as to the third *Intel* factor, he must provide authoritative proof that Spain will not accept the discovery, which he has not. *See* ECF No. [18] at 7. Applicant contends that Respondent conflates Spain's requirement to examine witnesses in front of a judge with the submission of transcripts for depositions taken abroad as general evidence. *See id*. at 5. She asserts that she can apostille the deposition transcripts so that they may be submitted as public documents to the Spanish Court. *See id*. Further, Applicant argues that she is expected to produce evidence disputing Respondent 's assessment of their joint

assets and provide for equitable distribution of the marital property. *See* ECF No. [1] at 19.

The Court finds that this factor weighs in favor of granting the Application. The analysis here again turns on discoverability rather than admissibility, and Respondent's arguments are focused on admissibility and do not speak to discoverability. Moreover, the Spanish Court may reject the evidence Applicant seeks through the Application if it chooses to do so. *See In re Bernal*, 2018 WL 6620085, at *5. The stay of the Spanish Liquidation Proceeding, to which both Applicant and Respondent assert contrary positions, does not weigh against granting the Application. Indeed, other judges in this District have granted § 1782 applications even when the discovery period in the foreign proceeding closed because the foreign tribunal is best suited to make admissibility determinations and would be in a better position to do so if the district court allowed the discovery. *In re Pons*, 2020 WL 364125 at *5 (finding receptivity factor weighed in the applicant's favor because the respondent did not offer authoritative proof that evidence of new marital assets, that should have been but were not disclosed, would be rejected by Ecuadorian family court, despite the discovery period closing and the applicant attempting to reopen it thrice but failing). As explained above, the Spanish Liquidation Proceeding is stayed, not terminated, and Applicant represents that the Spanish Court retains jurisdiction over it. While the Parties offer mere predictions on whether and when the stay will be lifted, it is ultimately up to the Spanish Court to determine the admissibility of the evidence.

The Court also notes "[a] foreign nation may limit discovery within its domain for reasons peculiar to its own legal practices, culture, or traditions—reasons that do not necessarily signal objection to aid from United States federal courts." *Intel*, 542 U.S. 241 at 261 (citing *In re Bayer AG*, 146 F.3d 188, 194 (3d Cir. 1998), *as amended* (July 23, 1998) ("[T]here is no reason to assume that because a country has not adopted a particular discovery procedure, it would take offense at

its use.”). Courts instead look to authoritative proof that the foreign court would reject the evidence gathered with the assistance of the § 1782 application. *See In re Bernal*, 2018 WL 6620085 at *6; *see also In re Deposito Centralizado de Compensacion y Liquidacion de Valores Decevale, S.A.*, No. 20-MC-25212, 2021 WL 2323226, at *7 (S.D. Fla. June 1, 2021) (finding that the second *Intel* factor weighed in favor of granting discovery). As noted above, examples of such authoritative proof include judicial, executive, or legislative declarations that specifically address using the evidence gathered because they help guide the district court's discretion. *See In re Bernal*, 2018 WL 6620085 at *6.

Here, Respondent offers no such authoritative proof that the Spanish Court will reject the evidence Applicant hopes to obtain through the Application. At best, the Parties offer conflicting interpretations of Spanish procedural law and the Court “decline[s] to engage in speculative forays into unfamiliar legal territories to determine the likely reaction of a Spanish Court to any § 1782 discovery.” *In re Bernal*, 2018 WL 6620085, at *7 (citation and internal quotations omitted). Accordingly, the second *Intel* factor weighs in favor of granting the Application.

c. <u>The Third *Intel* Factor</u>

Turning to the third *Intel* factor, the Court must evaluate whether the Application “conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States.” *See Intel*, 542 U.S. at 265; *In re Clerici*, 481 F.3d at 1334. Applicant argues that there are no Spanish rules, laws, or policies that would bar admission of the requested discovery. *See* ECF No. [1] at 19 (citing ECF No. [1-2] at ¶18). She contends that Spanish law does not require her to rely exclusively on letters rogatory, nor does it prohibit other ways to obtain foreign discovery. *See* ECF No. [21] at 6. Applicant reiterates that the stay of the Spanish Liquidation Proceeding is procedural and does not terminate the proceeding regarding marital

assets and division of property; the Spanish Court retained jurisdiction over the matter; and that the pending Florida state court divorce action will be dismissed "soon" for lack of personal jurisdiction. *See* ECF Nos. [18] at 6-7 and [21] at 7.

Respondent disagrees with Applicant and states that the proper procedure for requesting the discovery she seeks is through letters rogatory, that she engaged in that process, and the Spanish Court has yet to rule on the request. *See* ECF No. [17] at 18-19. He asserts that Spain has restrictions on using foreign discovery in judicial proceedings, arguing such evidence has limited probative value; that the evidence may not be useful in Spain; and that the evidence would serve only to harass Respondent. *See id*. at 18. He contends that the Application does not conform to Spanish Law 29/2015, or the Hague Convention, and the discovery sought would be inadmissible in Spain. *See* ECF No. [20] at 2. He explains that Spain made a declaration to Article 23 of the Hauge convention "to restrict common-law pretrial documentary discovery from being obtained through such method." *See* ECF No. [20] at 3-4, 43-46; *see also* Ex. E. Further, Respondent contends that a pending letters rogatory request does not authorize a party to obtain foreign discovery through a separate, unilateral mechanism. *See id*. at 6. He argues that when a case is stayed in Spain, it suspends all the normal course of action. *See* ECF No. [20] at 7, 151-155 (Article 43).

In the Reply, Applicant asserts that the third *Intel* factor "fails when there are proof-gathering restrictions in the foreign proceeding that are akin to privileges that would prohibit the acquisition or use of the items sought." ECF No. [18] at 7. She contends that there is no need to exhaust other discovery mechanisms before applying for judicial assistance via a § 1782 application, even where the discovery sought may be available in the foreign jurisdiction. *See id*. Applicant maintains that Respondent only points to Applicant's letters rogatory request to the

Spanish Court to substantiate his contention of Applicant's circumvention of proof-gathering restrictions. *See id*. at 8. She disputes this and states that, under Spanish law, she was under no obligation to limit herself to letters rogatory to obtain the requested discovery. *See id*. Applicant also notes that Respondent's Spanish law expert's position that depositions taken outside of Spain have limited probative value is "far from a privilege barring taking such depositions." *Id*.

The Court finds that the third *Intel* factor weighs in favor of granting the Application. The relevant inquiry regarding this factor is not whether the Spanish Court "'would order the requested discovery if it had jurisdiction over [Respondent] but instead whether there are [Spanish] 'proof-gathering restrictions that are akin to privileges that would prohibit the acquisition or use of the items sought.'" *In re Salem*, 2024 WL 4464288 at *12 (citing *In re Bernal*, 2018 WL 6620085, at *8). This is because "there is no requirement to first seek discovery from the non-US tribunal or exhaust other options before applying to a district court for § 1782 discovery," "even when the requested documents may be available in the foreign jurisdiction." *Id.* (citing *In re: Bracha Found.*, 663 F. App'x 755, 765 (11th Cir. 2016)). Respondent fails to raise any such privileges and the alleged proof-gathering circumventions he does identify are not the kind contemplated under the case law. *See id*.

Addressing some of Respondent's other arguments under the third *Intel* factor, he contends that the "stay confirms that the Application cannot be justified by reference to the" Spanish Liquidation Proceeding because those proceedings "were not the foreign proceedings the discovery was said to serve." *See* ECF No. [20] at 7. The Application, however, explains that: "The information requested will provide [Applicant] with proof that she has the right to tens or hundreds of millions of dollars of assets nominally held by third parties and provide [Applicant] with accounting for millions more dollars of shares which [Respondent], Sukhin, Hill, Bass and

others sold without [Applicant]'s valid knowledge, consent or authorization. *Id.* at ¶ 23-24. [Applicant] seeks to obtain such evidence for use in the Spanish Court to obtain a fair and equitable division of the marital property and just terms of the dissolution of marriage including suitable alimony and child support." *See* ECF No. [1] at 4. Thus, Applicant specifically includes fair distribution of marital property as one of the bases for the requested discovery. It does not escape the Court that Respondent requested the stay in the Spanish Liquidation Proceeding and is now asserting that Applicant cannot obtain the requested discovery because of it.[7] *See* ECF Nos. [21] at 7 and [21-4] at 1. Similarly, Respondent's contention that the purpose of Spain's declaration to Article 23 of the Hauge Convention is to restrict common law pre-trial documentary discovery from being obtained in such a way fails by his own concession that the declaration "technically applies to letters of request rather than directly to a § 1782 application." *See* ECF No. [20] at 2-3. And, finally, the Court will not accept his conclusory statement that Spain's declaration to Article 23 of the Hauge Convention "confirms" that Spain does not treat "broad document discovery. . . as an ordinary mechanism for gathering evidence destined for Spanish proceedings." *See id.* at 2-3. As explained above, the Parties provide conflicting characterizations and explanations of Spanish law, but the Court need not venture into unfamiliar legal territory and provide its own interpretation of Spanish law. The Court, therefore, concludes that the third *Intel* factor likewise weighs in Applicant's favor.

d. The Fourth *Intel* Factor

Finally, the Court must assess whether Applicant's request is unduly intrusive or burdensome. *See Intel*, 542 U.S. at 265; *In re Clerici*, 481 F.3d at 1334. The Application explains that the discovery requests are "highly relevant" to the claims set forth in the Spanish proceedings

and proportional to the needs of the case such that "the likely benefit of the proposed discovery to Applicant outweighs the possible burden or expense of production." *See* ECF No. [1] at 19. Applicant argues that Respondent and the subjects of the discovery requests, along with others, "intentionally hid and misappropriated marital assets using financial instruments including but not limited to" the financial institutions that are the subject of the discovery requests. *See id*. at 19-20. Finally, Applicant explains that these discovery requests are not unduly burdensome or intrusive, and are narrowly tailored to the time periods and topics "essential to disputing [Respondent]'s misstatements of fact." *Id*.

Respondent, in turn, argues — albeit under *Intel* factor 3 — that the requested discovery would be duplicative of both the pending Florida state court divorce action and a lawsuit pending in the District of New Hampshire. *See* ECF No. [17] at 19. Respondent contends that the requests are overbroad in time and scope, and neither proportional nor narrowly tailored to the needs of the case. *See* ECF No. [17] at 20. He asserts that none of the documents requested from the financial institutions or discovery subjects are narrowly tailored to the allegations of "dissipation of marital property or discovery of such property" but that the Application broadly seeks "every document and communication related to investments, transactions, strategy, transfers, expenses, and instructions with over a dozen individuals or business entities." *See id*. He cites case law that supports the general proposition that courts must look into whether the requested discovery is unduly burdensome and consider whether the requests are made in bad faith for the purpose of harassment. *See id*. at 19-21. Aside from summarily characterizing the discovery requests as a "fishing expedition," Respondent makes no argument of bad faith.

In the Reply, Applicant argues that Respondent has not put forth any evidence indicating that the requested discovery is intrusive or unduly burdensome. *See* ECF No. [18] at 8. She asserts

that this District has required the objecting party to substantiate its burden with affidavits or other evidence. *See id.* She maintains that Respondent's assertions of burden are abstract, conclusory, and insufficient; that the discovery is needed to contest his claim that none of the requested documents relate to marital property; and his assertion that the subpoenas broadly focus on investments, transactions, strategy, transfers, and expenses is conclusory and not supported by evidence. *See id.* Applicant also insists that the pending domestic proceedings do not bar relief and argues that the Florida divorce action will be dismissed for lack of personal jurisdiction and because Respondent admitted that the foreign tribunal already dissolved the marriage. *See* ECF No. [18] at 9. As to the District of New Hampshire proceeding, Applicant asserts that if discovery is lawfully received under § 1782, it can be used in domestic proceedings and that a § 1782 application may only be denied where the applicant attempts to use foreign litigation as a disguise to obtain domestic discovery. *See id.* at 9-10. Applicant argues that, if Respondent is concerned that Applicant will use the discovery obtained through the Application in the parallel domestic proceedings, he can request a protective order. *See* ECF No. [18] at 9-10.

The Court starts its analysis by noting that the Application seeks information from financial institutions and individuals other than Respondent. *See* ECF No. [1] at 2-3, 7, 12-3, 19; *see also* ECF Nos. [1-17] - [1-22]. As a result, Respondent cannot claim that the discovery is unduly burdensome as to him because the discovery requests are not directed to him, so he will not be involved in responding to the subpoenas. The Non-Parties may, upon being served with their respective subpoenas, raise such arguments, if applicable, and the Court will rule on such objections at such time.

Next, the Court disagrees with Respondent's assertion that the discovery requests are a "fishing expedition," overbroad, and not proportional to the needs of the case *See* ECF No. [17]

at 19-20. Although certain subpoenas seek documents going back to 2019, the Application alleges that around this same time, Respondent, Sukhin, Hill, Bass, and others began hiding money from her. *See* ECF No. [1] at 6. Indeed, Applicant alleges that in 2019, Respondent introduced her to the individual Non-Parties and this is when they "persuaded" her to create a family trust for the purported benefit of the whole family. *See id*. at 8. This is also the year that Applicant asserts Respondent and the individual Non-Parties "planned for [the] impending divorce" by "creating asset structures to which [Applicant] would not have any right and misrepresenting those structures to [her] as traditional estate planning mechanisms." *See id*. at 9. Thus, the discovery timeframe appears to be narrowly tailored to the issues Applicant seeks to prove in the Spanish Liquidation Proceedings.

Finally, Respondent's arguments regarding Applicant's ability to obtain the requested discovery through subsequently filed domestic proceedings have no bearing on this § 1782 application. The question here is whether the Court, applying § 1782 and the *Intel* factors, should exercise its discretion to allow the requested discovery to proceed for use in the Spanish Liquidation Proceeding. The mere fact that Applicant and Respondent have, since the filing of the Application, filed other proceedings against one another in other domestic jurisdictions does not bear on whether the requests made here, which pre-dated those proceedings, are unduly intrusive or burdensome. The Court, therefore, concludes that the fourth *Intel* factor weighs in Applicant's favor.

For those reasons, the Court finds that all four *Intel* factors weigh in favor of granting the Application for § 1782 aid.

**C. Granting the Application Would Further the Policy Underlying § 1782**

As a final consideration, the Court evaluates whether granting the application would further

the policy underlying § 1782, which is to encourage international comity. *See ZF Auto.*, 596 U.S. at 632; *In re Pimenta*, 942 F. Supp. 2d at 1289. Allowing Applicant to marshal the power of our courts to assist her in gathering evidence to use in the Spanish proceeding aligns with "Congress' wish to strengthen the power of district courts to respond to requests for international assistance." *See Consorcio Ecuatoriano*, 747 F.3d at 1269 (emphasis and quotation marks omitted). And it would certainly "encourag[e] foreign countries to provide reciprocal assistance to our courts." *See In re Pimenta*, 942 F. Supp. 2d at 1289. As a result, the Court finds that granting the Application would further the international comity concerns that underlie § 1782.

### D. The Motion to Supplement

The Court finally turns to the Unopposed Motion to Supplement, ECF No. [11]. The purpose of the Motion to Supplement, Applicant explains, was to inform the Court of new developments in the foreign proceedings and to fortify the requests for discovery contained in the Application. Although Applicant included documents substantiating developments in the foreign proceedings, it is evident the Parties took the opportunity to address additional points and arguments raised in Respondent's Motion to Intervene — arguments that were not particularly relevant to the Court's § 1782 analysis. The Court will, nonetheless, accept the materials submitted with the Motion to Supplement to complete the record and because the Motion is unopposed. Accordingly, the Motion to Supplement, **ECF No. [11]**, is **GRANTED**.

## IV. CONCLUSION

Because Applicant has satisfied the four statutory factors under § 1782, all four *Intel* factors weigh in favor of granting the Application, and granting the application would further the international comity policy underlying § 1782, it is **ORDERED and ADJUDGED** as follows:

1. The Application, **ECF No. [1]**, is **GRANTED**;

2. Applicant is authorized to issue subpoenas for documents and testimony in the form of the subpoenas attached to the Application as Exhibits P, Q, R, S, T, and U, *see* ECF Nos. [1-17] – [1-22];
3. Discovery shall be conducted in accordance with the Federal Rules of Civil Procedure;
4. The Court reserves jurisdiction to enter further orders that are necessary and proper to enforce this Order;
5. The Motion to Supplement, **ECF No. [11],** is **GRANTED**, and
6. Applicant shall file a status report **on or before November 28, 2026**, indicating the status of the discovery identified in the Application.

**DONE AND ORDERED** in Chambers in Miami, Florida on August 28, 2026.

**MARTY FULGUEIRA ELFENBEIN**
**UNITED STATES MAGISTRATE JUDGE**

cc: All counsel of record